PEGGY HOLLMANN *et al.*, Plaintiffs-Appellants, v. HARRISON C. PUTMAN III, Defendant-Appellee.

Third District    No. 3—93—0429

Opinion filed April 21, 1994.

Jack C. Vieley, of Peoria, for appellants.

Karen L. Kendall, David R. Sinn, and Elizabeth W. Christensen, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiffs, Peggy and Elno Hollmann, sued the defendant, Dr. Harrison C. Putman III. Count I of the second amended complaint alleged a cause of action for medical malpractice, count II alleged loss of consortium, and count III alleged breach of contract. The trial court granted summary judgment on all counts. On appeal, the plaintiffs contest the granting of summary judgment as to count III only. We affirm.

Count III alleged that on October 17, 1989, the parties entered into an oral contract pursuant to which the defendant agreed to perform surgery to remove a tumor on Peggy Hollmann's thyroid. Under the agreement, if the defendant found any malignancy while operating on Peggy, he was to remove the entire thyroid. The plaintiffs alleged that during the surgery, the defendant found a malignancy and performed a right lobectomy. He did not, however, remove the left lobe, and thus breached the contract. As a result, the plaintiffs allege, Peggy was forced to undergo a subsequent surgery to remove the left lobe and incurred additional expenses.

The record reveals that during the initial surgery, a specimen of Peggy's right lobe was taken and analyzed by Dr. David Flanders. Dr. Flanders' report, which had been given to the defendant during the surgery, stated that Peggy's tumor contained "follicular neoplasms suspicious for low-grade follicular carcinoma, further diagnosis deferred." Dr. Flanders later explained in a deposition that by "further diagnosis deferred" he meant that further analysis of the specimen would be required to determine the malignancy or

benignancy of the tissues. He stated that it was not possible to reliably diagnose follicular cancer during the surgery.

Plaintiff's expert, Dr. Phillip Lear, opined that the defendant should have removed the plaintiff's left lobe during the surgery. Dr. Lear based this conclusion on the pathology report prepared by Dr. Richard Anderson two days after Peggy Hollmann's surgery. That report indicated "capsular invasion and miotic figures," which, according to Dr. Lear, is a "red flag" for cancer. However, Dr. Lear assumed that this report had been given to the defendant during the surgery.

The defendant's expert, Dr. Blake Cady, chief of surgical oncology at New England Deaconess Hospital in Boston, Massachusetts, initially noted that a controversy exists in thyroid surgery over whether to do a thyroid lobectomy or a total thyroidectomy when faced with an equivocal frozen section report of follicular carcinoma. He contended that Dr. Lear's opinion was based on the erroneous assumption that the defendant had Dr. Anderson's pathology report during the surgery. He further stated that based upon the information available to the defendant at the time of surgery, the defendant would not have been justified in removing the left lobe.

Elno Hollmann stated in an affidavit that after the surgery, the defendant informed him that testing of a frozen section of his wife's right thyroid lobe showed that it was definitely malignant. However, the defendant informed him that he did not remove the left lobe because such a procedure "would be tedious and time-consuming."

The defendant filed a motion for summary judgment alleging that "no justiciable issue of fact existed with respect to the allegations of negligence." The motion did not deny the existence of an oral contract between the parties for the removal of the entire thyroid if a malignancy was found during surgery. After a hearing on the motion, the trial court granted the defendant's motion, finding that no material issue of fact existed on all counts of the plaintiffs' complaint. In a subsequent bystander's report, the trial judge stated that, with respect to count III, "the statements attributed to defendant by plaintiff Elno Hollmann did not create a triable issue of fact on the breach of contract count."

The plaintiffs first contend that the trial court erred in granting summary judgment on count III of the complaint because the motion was not directed at that count. The plaintiffs base their argument on the statement in the motion that "there exists no justiciable issue of fact with respect to the allegations of negligence made by the plaintiffs." The defendant counters that the same basis for granting summary judgment on counts I and II also exists with respect to count

III, and, therefore, the court properly granted summary judgment on all counts.

If what is contained in the pleadings and affidavits would constitute all of the evidence before the court and upon such evidence the court would be required to direct a verdict, then summary judgment should be entered. *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.

■ Although the motion for summary judgment was not specifically directed at count III of the complaint, the defendant's prayer for relief did request that summary judgment be granted in his favor against "the plaintiffs in bar of plaintiffs' cause of action." In addition, the record of the summary judgment hearing indicates that arguments were held on all counts of the complaint. Therefore, we find that the trial court could have entered judgment on the breach of contract count. Moreover, the plaintiffs failed to raise this issue at the hearing on the motion or in a post-judgment motion. Thus, this issue is considered waived as well. See *Strom International, Ltd. v. Spar Warehouse & Distributors, Inc.* (1979), 69 Ill. App. 3d 696, 388 N.E.2d 108.

The plaintiffs next contend that a genuine issue of material fact was raised by Elno Hollmann's affidavit and, thus, the summary judgment motion should have been denied.

In granting the motion for summary judgment on count III, the trial judge found that Elno's statements did not create a triable issue of fact. It is not clear whether the trial court concluded that Elno's alleged statements did not raise a triable issue of fact as to the existence of a contract, or whether as a matter of law there was no breach of contract. This court must therefore determine whether an enforceable contract existed, and then determine whether Elno's statements created a genuine issue of material fact as to the breach of that contract.

In medical cases, a distinction is made between a doctor's therapeutic assurances that the patient will recover, which are not actionable, and an express promise that treatment will produce a specific result. (See *Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 305 N.E.2d 571.) The latter promise has been implicitly recognized as a proper basis for a breach of contract action. *Cirafici v. Goffen* (1980), 85 Ill. App. 3d 1102, 407 N.E.2d 633.

In *Cirafici*, the appellate court reversed the trial court's dismissal of the plaintiff's breach of contract and warranty claims and found that an express promise was made to produce a specific result. There, the defendant, a dentist, told the plaintiff that she would be able to eat "corn on the cob" and other foods with the dental implants he

installed. The court reasoned that the promise went beyond a mere therapeutic reassurance that "everything would be all right" to the extent of advising the plaintiff that she would be able to utilize the implants as she would natural teeth. (*Cirafici*, 85 Ill. App. 3d at 1107, 407 N.E.2d at 637.) Thus, it concluded that the plaintiff should be given the opportunity to prove her case without the necessity of pleading or proving a separate consideration for the promise. *Cirafici*, 85 Ill. App. 3d at 1107-08, 407 N.E.2d at 637.

■ In the instant case, the defendant's motion did not deny the existence of an oral contract for removal of the entire thyroid if a malignancy was discovered during surgery. Thus, we will assume that such a contract existed. However, an action for damages on a theory of breach of contract requires the performance of all conditions precedent stated in the contract. *Yale Development Co. v. Oak Park Trust & Savings Bank* (1975), 26 Ill. App. 3d 1015, 325 N.E.2d 418.

Here, prior to removing the thyroid, the defendant must have found that a malignancy existed. The medical evidence reveals that definitive evidence of a malignancy was not confirmed until two days after surgery, when Dr. Anderson's report was issued. Although Elno Hollmann states in his affidavit that the defendant knew of the malignancy during the surgery, this self-serving statement stands in stark contrast to the medical evidence available at the time. Therefore, we find that although a contract existed, no breach occurred since the condition precedent to the defendant's performance was not met.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.