MIA MORRIS, Plaintiff-Appellant and Cross-Appellee, v. HARVEY CYCLE AND CAMPER, INC., d/b/a Watson Motorsport, Ltd., *et al.*, Defendants-Appellees and Cross-Appellants.

First District (6th Division)   No. 1—07—3271

Opinion filed June 12, 2009.

Keith J. Keogh and Alexander H. Burke, both of Law Offices of Keith J. Keogh, Ltd., of Chicago, for appellant.

Jason J. Friedl, of Purcell & Wardrope, Chtrd., of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Mia Morris appeals the dismissal of her second amended complaint against defendant Harvey Cycle & Camper, Inc., d/b/a Watson Motorsport, Ltd., under section 2—619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619.1 (West 2006)). Plaintiff alleged four counts in her complaint but on appeal she challenges only the dismissals of count I for violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2006)), and count IV for defamation *per se*. Defendant cross-appeals the denial of its motions for attorney fees from plaintiff for bringing a bad-faith law suit. We affirm.

Plaintiff in the first version of her complaint named defendant's employees, John Does 1 through 5, as defendants, but omitted these parties from her second amended complaint. Plaintiff alleged in her second amended complaint defendant engaged in deceptive practices in the financing and sale of a car to her brother, Shawn, and in pressuring plaintiff to cosign a loan after Shawn failed to qualify for financing. Plaintiff claimed Shawn made a down payment on a car at defendant's dealership with the sale contingent on financing. Shawn was allowed to use the car while defendant attempted to arrange financing. After several days, defendant's employee called Shawn and asked him to come to the dealership to re-sign some loan papers. Plaintiff accompanied Shawn to the dealership, using the car Shawn was trying to buy, where they learned Shawn had not qualified for financing. Plaintiff alleged defendant's employees then pressured her to cosign the loan so the deal could go through. When plaintiff refused, an employee demanded the return of the car. Shawn agreed to return the car in exchange for his down payment. Defendant refused to return the down payment but continued to demand the car.

Plaintiff further alleged defendant's employees started yelling at plaintiff and Shawn and blocked the car to prevent them from leaving the dealership. The employees then called the police, reporting the car

as stolen. Several squad cars and police officers arrived. Defendant's employees told the officers plaintiff and Shawn had stolen the car. An officer later said the police considered defendant's call to be a false report. The officers told defendant's employees to stop yelling and trying to intimidate plaintiff and Shawn. Plaintiff and Shawn left in the car that Shawn had tried to purchase. He returned the car a few days later in exchange for his down payment. Plaintiff alleged that as a result of the ordeal, she suffered severe emotional distress, inconvenience and aggravation.

Plaintiff in her second amended complaint called the court's attention to a 2005 lawsuit filed against defendant by William Reid and Renee Picl in the northern district of the federal court in Illinois. The action alleged misconduct similar to that alleged here. Plaintiffs Reid and Picl claimed defendant violated the Consumer Fraud Act by: (1) making deceptive and fraudulent calls to them concerning paperwork for a car sale; (2) pressuring them to buy cars they did not need; (3) trying to coerce a signature on a loan; (4) making deceptive statements on which they relied; (5) blocking the car's exit when they failed to comply with the defendant's demands; and (6) threatening them with arrest and calling the police. *Reid v. Harvey Motorcycle & Camper*, No. 05 C 5375, slip op. at 1-4 (N.D. Ill. November 30, 2007) (unpublished memorandum opinion and order). The district court held that Reid had failed to state a claim under the Consumer Fraud Act because he did not allege that he suffered proximate or actual damages separate from those suffered by Picl. *Reid,* slip op. at 5.

Defendant moved to dismiss plaintiff's second amended complaint under section 2—619.1 of the Code (735 ILCS 5/2—619.1 (West 2006)), arguing plaintiff failed to state a cause of action and defendant had valid defenses to plaintiff's claims. The trial court dismissed count I, finding plaintiff's allegations of emotional distress failed to show damages. The court also dismissed count IV, defamation *per se*, finding defendant's statements to the police were protected by absolute privilege.

The trial court then addressed defendant's motion for attorney fees under section 10a(c) of the Consumer Fraud Act (815 ILCS 505/10a(c) (West 2006)) and Supreme Court Rule 137 (155 Ill. 2d R. 137). Defendant argued it was entitled to attorney fees as the prevailing party in a matter where plaintiff had not acted in good faith. The trial court denied defendant's motion for attorney fees, finding plaintiff's action did not rise to the level of bad faith. The court based its conclusion in part on the fact that the plaintiffs in *Reid* alleged similar misconduct against the same defendant as here. The trial court called plaintiff's allegations "somewhat serious" and opined plaintiff might

have been entitled to relief, depending on the facts and legal theories she presented. The trial court denied defendant's motion for attorney fees. The court also denied plaintiff's motion for reconsideration.

We review *de novo* a trial court's dismissal of a complaint under section 2—619.1 of the Code (735 ILCS 5/2—619.1 (West 2006)). *Balmoral Racing Club, Inc. v. Gonzales*, 338 Ill. App. 3d 478, 484, 788 N.E.2d 269 (2003). Section 2—619.1 is a combined motion that incorporates sections 2—615 and 2—619 of the Code. 735 ILCS 5/2—619.1, 2—615, 2—619 (West 2006). "[W]e accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party." *Balmoral Racing Club*, 338 Ill. App. 3d at 484.

■ Plaintiff first challenges the trial court's conclusion that she failed to state a private cause of action under the Consumer Fraud Act. This Act bars unlawful or unfair methods of competition, unfair or deceptive acts or practices or the use of deception, fraud, false pretense, false promise or misrepresentation. 815 ILCS 505/2 (West 2006). Section 10a(a) of the Consumer Fraud Act (815 ILCS 505/10a(a) (West 2006)) authorizes a private cause of action. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 179, 835 N.E.2d 801 (2005). Only a person who suffers actual damages as a result of a violation of the Consumer Fraud Act may bring a private action. 815 ILCS 505/10a(a) (West 2006); *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 626-27, 888 N.E.2d 1190 (2008); *Xydakis v. Target, Inc.*, 333 F. Supp. 2d 686, 688 (N.D. Ill. 2004). The Consumer Fraud Act provides remedies for purely economic injuries. *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 287, 856 N.E.2d 542 (2006). Actual damages must be calculable and "measured by the plaintiff's loss." *Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 326, 696 N.E.2d 804 (1998). The failure to allege specific, actual damages precludes a claim brought under the Consumer Fraud Act. *White*, 368 Ill. App. 3d at 287. Here, plaintiff did not allege actual damages in the form of specific economic injuries. She alleged only emotional damages. For this reason, the trial court correctly dismissed plaintiff's count I for relief under the Consumer Fraud Act.

Plaintiff challenges this result by citing *Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 235 Ill. App. 3d 70, 86, 600 N.E.2d 1218 (1992). Plaintiff argues that in *Roche* this court held that nonmonetary damages were compensable under the Act. The plaintiff in *Roche* filed a complaint against a car dealership, seeking actual and punitive damages based on: (1) conversion of the plaintiff's property; and (2) violations of the Consumer Fraud Act. *Roche*, 235 Ill. App. 3d at 72. A jury awarded the plaintiff $2,405 in compensatory and punitive damages

for conversion. *Roche*, 235 Ill. App. 3d at 72. The trial court also found the defendant had violated the Consumer Fraud Act and awarded the plaintiff $750 in damages for aggravation and inconvenience. *Roche*, 235 Ill. App. 3d at 72-73. The defendant appealed. *Roche*, 235 Ill. App. 3d at 72. This court determined the plaintiff was misled by the dealership to believe her trade-in was a sufficient down payment for a new car and the dealership could arrange financing for her. *Roche*, 235 Ill. App. 3d at 86. "When this representation proved to be untrue and [the dealership] failed to sell plaintiff the new [car] based on the terms of the original agreement or to return her used car or the equity in it, a direct violation of the [Consumer Fraud Act] occurred and resulted in damage to plaintiff." *Roche*, 235 Ill. App. 3d at 86. We affirmed the trial court's award of $750 in damages for the plaintiff's aggravation and inconvenience. *Roche*, 235 Ill. App. 3d at 86.

The northern district of the federal court distinguished *Roche* in *Xydakis*, 333 F. Supp. 2d at 688. The court explained that damages for aggravation are compensable under the Consumer Fraud Act only when they are part of a total award that includes actual economic damages. *Xydakis*, 333 F. Supp. 2d at 688. There is no cause of action under the Consumer Fraud Act when a plaintiff alleges only aggravation and not actual damages. *Xydakis*, 333 F. Supp. 2d at 688. We agree with the district court. Plaintiff here failed to allege damages other than emotional distress, inconvenience and aggravation. *Roche* does not authorize a private cause of action under the Consumer Fraud Act in these circumstances.

We note that in her appellate brief plaintiff argues the trial court erred in an interim written order by assessing her claims under section 10b(5) of the Consumer Fraud Act (815 ILCS 505/10b(5) (West 2006)). This section states that the Consumer Fraud Act does not apply to: "Claims seeking damages for conduct that results in bodily injury, death, or damage to property other than the property that is subject to the practice claimed to be unlawful." 815 ILCS 505/10b(5) (West 2006). Plaintiff argues the trial court's dismissal of count I of her second amended complaint must be reversed because this section, which was cited in the earlier interim order, does not pertain to her claim of damages for emotional distress, aggravation and inconvenience. We have reviewed the order at issue and conclude the trial court's citation to this section was part of a general discussion of the provisions in the Consumer Fraud Act, not the grounds for dismissing her second amended complaint. But even if the trial court had relied on this section, reversal is not warranted. "It is established law that a correct decision on erroneous grounds is not a basis for reversal, and is harmless error. It is the correctness of the court's ruling and not the

reasons therefor that is before the reviewing court." *Rees v. Spillane*, 341 Ill. App. 647, 661, 94 N.E.2d 686 (1950).

■ Plaintiff next argues that the trial court erred in dismissing count IV, defamation *per se*, on the grounds that defendant's stolen car report to the police was protected by absolute privilege. Plaintiff maintains the statements of defendant's employees to the police were not for the purpose of instituting legal proceedings but rather a "strong arm tactic" to recover the car without refunding Shawn's down payment.

To establish defamation, the plaintiff must show the defendant: (1) made a false statement about the plaintiff; (2) made an unprivileged publication of that statement to a third party; and (3) damaged the plaintiff by publishing the statement. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579, 852 N.E.2d 825 (2006). A defamatory remark is "published" when it is communicated to someone other than the plaintiff. *Gibson v. Philip Morris, Inc.*, 292 Ill. App. 3d 267, 275, 685 N.E.2d 638 (1997). A remark that imputes the commission of a crime is *per se* defamatory. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 88, 672 N.E.2d 1207 (1996). Defamatory statements that would otherwise be actionable will escape liability when the conduct is to further an interest of social importance such as the investigation of an alleged crime. *Thomas v. Petrulis*, 125 Ill. App. 3d 415, 418, 465 N.E.2d 1059 (1984), citing W. Prosser, Torts §114, at 776 (4th ed. 1971). Defamatory statements are not actionable if they are protected by an absolute or conditional privilege. *Zych v. Tucker*, 363 Ill. App. 3d 831, 834, 844 N.E.2d 1004 (2006). "It has long been held that statements made to law enforcement officials, for the purpose of instituting legal proceedings, are granted absolute privilege." *Vincent v. Williams*, 279 Ill. App. 3d 1, 7, 664 N.E.2d 650 (1996). "When absolute privilege attaches, no action for defamation lies, even where malice is alleged." *Vincent*, 279 Ill. App. 3d at 7.

Illinois courts have affirmed the rule of absolute privilege for statements to law enforcement officials on several occasions. In *Starnes v. International Harvester Co.*, 184 Ill. App. 3d 199, 203, 539 N.E.2d 1372 (1989), *abrogated on other grounds in Bryson*, 174 Ill. 2d at 108, we considered whether statements to law enforcement officials should be conditionally, but not absolutely, privileged. The plaintiff in *Starnes* was a judge who had presided over a contentious product liability trial. *Starnes*, 184 Ill. App. 3d at 201. Counsel for one of the parties considered the plaintiff remiss in his role as judge presiding over the trial and presented allegations of impropriety to federal law enforcement officials. *Starnes*, 184 Ill. App. 3d at 201. The plaintiff believed the allegations defamatory and filed an action for libel and slander.

*Starnes*, 184 Ill. App. 3d at 201. The trial court concluded the statements to the law enforcement officers were protected by absolute privilege. The plaintiff appealed, arguing such immunity "condones and even encourages malicious harassment through police investigations." *Starnes*, 184 Ill. App. 3d at 203. The plaintiff maintained qualified privilege would provide adequate protection to those reporting alleged wrongdoing to law enforcement authorities. *Starnes*, 184 Ill. App. 3d at 203. This court disagreed, finding that in Illinois the absolute privilege rule applies when allegations of criminal activities are made to prosecuting authorities. *Starnes*, 184 Ill. App. 3d at 204. Illinois decisions following *Starnes* include *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 969-73, 569 N.E.2d 1104 (1991) (the defendant's allegedly false statement to the police that the plaintiff harassed, assaulted and verbally threatened a coworker was protected by absolute privilege regardless of allegations of malice), and *Vincent*, 279 Ill. App. 3d at 7 (the allegedly false statements of two bar patrons who told police officers the plaintiff had made threats with a knife were protected by absolute privilege). See also *Bradley v. Avis Rental Car System, Inc.*, 902 F. Supp. 814, 820 (N.D. Ill. 1995) (a report to the police by rental car agency employees, claiming plaintiff's rental car had been stolen when only a paperwork error had occurred, was protected by absolute privilege).

Plaintiff argues that even if, under *Starnes* and its progeny, allegations of criminal activities made to institute legal proceedings are entitled to absolute privilege, the statements here were not intended to institute legal proceedings. Instead, the statements were intended as a "strong arm tactic" for recovering the car. Plaintiff cites a Supreme Court opinion, *Kalina v. Fletcher*, 522 U.S. 118, 127, 139 L. Ed. 2d 471, 479-80, 118 S. Ct. 502, 508 (1997), to argue that the nature of the function being performed by the speaker in making an allegedly defamatory statement determines whether absolute immunity should apply. Plaintiff argues that the nature of the function here was to intimidate for commercial gain, not to institute proceedings for the theft of the car.

Illinois is among a minority of states that afford absolute privilege to statements to law enforcement officials. See *Fridovich v. Fridovich*, 598 So. 2d 65, 67 n.4 (Fla. 1992) (for summary of state laws). While Florida recognizes only qualified privilege for private-citizen reports to the police, states in addition to Illinois that recognize absolute privilege include Kentucky, Idaho, Alabama, Oregon and Texas. *Fridovich*, 598 So. 2d at 67 n.4. See also *Ledvina v. Cerasani*, 213 Ariz. 569, 574, 146 P.3d 70, 75 (App. 2006) (under a recent amendment to the Arizona Constitution, "putative crime victims in Arizona are entitled to

absolute immunity when they complain to police"); *Hagberg v. California Federal Bank FSB*, 32 Cal. 4th 350, 81 P.3d 244, 7 Cal. Rptr. 3d 803 (2004) (a conflict between two California appellate courts was resolved in favor of absolute privilege).

We have not found a case in Illinois or another jurisdiction that applies absolute privilege in the unique circumstances presented here. Plaintiff here alleges a report of criminal activity to the police was not only false, but was used to intimidate and exert pressure on her to co-sign a loan and not to institute legal proceedings. There are numerous jurisdictions where absolute privilege has been abandoned in favor of qualified or conditional privilege when the reporter of an alleged crime had a bad motive. See, for example, *Gallo v. Barile*, 284 Conn. 459, 472, 935 A.2d 103, 111 (2007) (an employer's informal statement to the police, accusing an employee of wrongdoing, would be protected from a defamation action only if the statement was made in good faith: "In view of the potentially disastrous consequences that may befall the victim of a false accusation of criminal wrongdoing, we are unwilling to afford absolute immunity to such statements"); *Pope v. Motel 6*, 121 Nev. 301, 317, 114 P.3d 277, 283 (2005) ("The competing policies of safeguarding reputations and full disclosure are best served by a qualified privilege. To the extent that we suggested *** statements made to police before the initiation of criminal proceedings could be deemed 'communications preliminary to a judicial proceeding' under the Restatement (Second) of Torts, section 587, we recede from that premise"); *DeLong v. Yu Enterprises, Inc.*, 344 Or. 166, 169-70, 47 P.3d 8, 9-10 (2002) (a motel owner, who told the police that money and property were missing after a dispute with the motel manager, was not entitled to absolute immunity when the accusations proved baseless); *Smits v. Wal-Mart Stores, Inc.*, 525 N.W.2d 554, 557-58 (Minn. App. 1994) (Wal-Mart was not entitled to absolute or qualified privilege when, without adequate investigation, its employee reported to police that a competitor's employee was taking photographs inside the defendant's store with a stolen camera); *Caldor, Inc. v. Bowden*, 330 Md. 632, 652, 625 A.2d 959, 968 (1993) (an employer's malicious statements to police, accusing the plaintiff of theft before the commencement of an official investigation, were not entitled to absolute privilege).

Plaintiff asks us to join the jurisdictions that afford only qualified and not absolute privilege when a person with an ulterior motive reports a "crime" to the police. We decline to do so and reaffirm the long-standing law in Illinois that statements to law enforcement officials are absolutely privileged.

■ Defendant maintains on cross-appeal the trial court erred in denying its motion for attorney fees under Supreme Court Rule 137

(155 Ill. 2d R. 137) and section 10(c) of the Consumer Fraud Act (815 ILCS 505/10(c) (West 2006)). Defendant argues plaintiff's allegations were not grounded in fact or existing law and failed to allege a good-faith basis for a change in the law. Defendant further claims plaintiff obstructed the discovery process and caused mounting expenses to defendant in defending an inappropriate lawsuit.

Supreme Court Rule 137 provides that a trial court may impose a sanction against a party or its counsel if the pleadings are not warranted under existing law, supported by good-faith arguments for changes to laws or well grounded in fact. 155 Ill. 2d R. 137. The purpose of Rule 137 is to prevent frivolous and false lawsuits but not to penalize parties and their attorneys merely because a lawsuit is unsuccessful. *Krawczyk v. Livaditis*, 366 Ill. App. 3d 375, 379, 851 N.E.2d 862 (2006). Section 10a(c) of the Consumer Fraud Act allows the court to award "reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c) (West 2006). A trial court may award attorney fees under section 10a(c) only if it first makes a threshold finding that the plaintiff acted in bad faith. *Krautsack v. Anderson*, 223 Ill. 2d 541, 559, 861 N.E.2d 633 (2006).

Decisions on motions for attorney fees are generally left to the sound discretion of the trial court. *Krautsack*, 223 Ill. 2d at 554. "An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815, 886 N.E.2d 1182 (2008).

Here, the trial court determined plaintiff's lawsuit did not rise to the level of bad faith and found plaintiff's allegations "somewhat serious." The court did not believe plaintiff's lawsuit was false and frivolous as shown by its conclusion that plaintiff might have been entitled to relief under certain legal and factual circumstances. We do not believe the trial court abused its discretion in denying defendant's motions for attorney fees.

The judgment of the circuit court is affirmed for the following reasons: (1) plaintiff failed to state a cause of action under the Consumer Fraud Act by alleging only emotional injuries and not actual economic injuries; (2) defendant's employees were protected from liability for defamation because their statements to the police were protected by absolute privilege; and (3) the trial court did not abuse its discretion in denying defendant's motion for attorney fees.

Affirmed.

O'MALLEY, P.J., and J. GORDON, J., concur.